UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| COREY A. BLANKENSHIP, | Case No. 3:17-cv-00087 |
| Plaintiff, | District Judge Walter H. Rice |
| | Magistrate Judge Sharon L. Ovington |
| vs. | |
| MARK J. BENNETT, et al., | |
| Defendants. | |

# REPORT AND RECOMMENDATIONS[1]

## I.  Introduction

Plaintiff Corey A. Blankenship brings this case through counsel under 42 U.S.C. § 1983 claiming in part that auxiliary Police Officer Mark J. Bennett arrested, searched, and seized him in violation of his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.  Blankenship raises additional claims against Officer Bennett; the Village of Gratis, Ohio Police Department; and the Village of Gratis.  The case is before the Court upon Defendants' Motion for Judgment on the Pleadings (Doc. #17), Blankenship's Memorandum in Opposition (Doc. #21), Defendants' Reply (Doc. #22), Defendants' Motion to Strike Exhibits (Doc. #23), Blankenship's Response (Doc. #24), and Defendants' Reply (Doc. #25).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

## II. Blankenship's Complaint

Accepting as true the allegations in the Complaint, *see E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001), Blankenship is a lifelong resident of the Village of Gratis and is very well known by its residents. "He is known to be developmentally disabled, gentle, and helpful." (Doc. #3, *PageID* # 23).

On March 11, 2016, Blankenship was inside a grocery store in Gratis, playing with the son of an employee as she prepared to close the store at the end of the day. Defendant Bennett, an on-duty auxiliary police officer, encountered Blankenship at the store and interacted with him for about two minutes. Officer Bennett was accompanied by Caitlin B. Babb, who was not a police officer and not an employee of the Village of Gratis. She was not authorized to accompany Officer Bennett while he was on duty.

"When Bennett first observed Corey [Blankenship] inside the store…, Corey was 'sweating and swaying.' Bennett played with the employee's child, 'deputizing' him, and then he and his female companion left the store." *Id*. at 24. The Complaint does not attribute its quoted phrase "sweating and swaying" to anyone.

After leaving the store, Officer Bennett moved his police cruiser to a position behind the store and out of the light "allegedly 'to witness if Blankenship was leaving with the clerk or driving his own vehicle.'" *Id*. When Blankenship left the store, he walked alone to his truck. Officer Bennett approached Blankenship "allegedly suspecting Corey was impaired, which Corey denied. Corey told Bennett that he was on blood pressure medication but had no other medical condition, having been asked by Bennett what would possibly contribute to 'his condition.'" *Id*.

The Complaint next asserts, "Bennett then claims he performed field sobriety tests, and that he instructed, demonstrated, and confirmed that Corey understood each test, as would be required. According to Bennett, Corey failed these tests or 'clues.'" *Id*.

Officer Bennett searched Blankenship, handcuffed him, and placed him in the back of the police cruiser, "informing him that he was not under arrest." *Id*. The Complaint explains, "According to his narrative report, Bennett informed Corey once again that he was not under arrest and that Bennett needed to contact the police chief to see what steps could be taken 'to not charge Mr. Blankenship with an offense.'" *Id*. at 25. Blankenship informed Officer Bennett that he had a learning disability and was "slow." He then asked Officer Bennett, more than once, to contact his mother with whom he lived. Officer Bennett refused. Throughout these interactions, and while Officer Bennett also talked on the phone, Blankenship and Ms. Babb remained in the cruiser.

The Complaint further states, "According to the narrative report, Bennett knew Corey, as he had interacted with Corey on previous occasions. Bennett told Corey he could either go to the emergency room or to jail. Though he allegedly believed Corey might be experiencing a medical emergency, Bennett continued to refuse Corey's requests to contact his mother." *Id*. (paragraph numbering omitted). Officer Bennett asked dispatch to send an ambulance, and then he immediately removed the handcuffs from Blankenship. The Complaint notes, "Bennett states that he asked Corey to remain seated in the cruiser 'in fear he might fall and sustain an injury.'" *Id*.

"Ultimately, Corey was transported to the Preble County Emergency Room for diaphoresis (sweating)." *Id*. Blankenship describes his visit to the emergency room for sweating as "quick." *Id*. He was charged a total of approximately $2,121.00, which has not been paid.

### III. Motions for Judgment on the Pleadings

To determine whether a complaint survives a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), courts "'must construe the complaint in the light most favorable to plaintiff,' 'accept all well-pled factual allegations as true[,]' and determine whether the 'complaint states a plausible claim for relief[.]'" *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting, in part, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)) (other citation omitted). The complaint does not need "detailed factual allegations,'" *Iqbal*, 556 U.S. at 678, but it must contain "'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action.'" *Albrecht*, 717 F.3d at 893 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A plaintiff must 'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' A plaintiff falls short if she pleads facts 'merely consistent with a defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct....'" *Id*. (quoting, in part, *Iqbal*, 556 U.S. at 678, 679).

"While the allegations in the complaint are the primary focus in assessing a Rule 12(c) motion, 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account.'" *McGath v.*

4

*Hamilton Local School Dist.*, 848 F.Supp.2d 831, 836-37 (S.D. Ohio 2012) (Graham, D.J.) (quoting, in part, *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008)) (other citation omitted). Yet, care must be taken when considering such evidence:

> If, on a motion under Rule…12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. Civ. P. 12(d).

## IV. Discussion: Blankenship's First and Second Claims

To state a plausible claim under 42 U.S.C. § 1983, Blankenship must allege facts showing that Officer Bennett deprived him of a right secured by the Constitution or laws of the United States, and that he did so under the color of state law.[2] *See Sumpter v. Wayne County*, 868 F.3d 473, 494 (6th Cir. 2017); *see also Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006).

Blankenship's First Claim for Relief ("violation of § 1983") asserts that Officer Bennett violated his right under the Fourth Amendment to be free from unreasonable arrest, search, and seizure. Blankenship's Second Claim for Relief ("false arrest and imprisonment") asserts that Officer Bennett placed him "under arrest without justification or probable cause, and detained him in the back of the police vehicle, in handcuffs, for an unreasonable length of time." (Doc. #3, *PageID* #27). The Complaint does not identify the legal basis (federal or state law) of his Second Claim. Construing the Complaint in

---

[2] Defendants do not address Blankenship's assertion that Officer Bennett acted under the color of state law.

5

his favor, it is grounded on the Fourth Amendment of the U.S. Constitution. *See Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005) ("A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff."); *cf. State v. Robinette*, 80 Ohio St.3d 234, 238 (1997) (where the Ohio and federal constitutional "provisions are similar and no persuasive reason for a differing interpretation is presented, this court has determined that protections afforded by Ohio's Constitution are coextensive with those provided by the United States Constitution…. The language of Section 14, Article I of the Ohio Constitution and the Fourth Amendment is virtually identical.").

Defendants contend that the doctrine of qualified immunity shields Officer Bennett from Blankenship's § 1983 claim because Officer Bennett's actions were objectively reasonable and because his warrantless actions were within the community-caretaking exception to the Fourth Amendment's warrant requirement.

"To survive the motion to dismiss on qualified-immunity grounds, the plaintiff must allege facts that 'plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right.'" *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (citation omitted). "'The test is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right.'" *Id.* (quoting *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 562-63 (6th Cir. 2011)).

"[I]t is generally inappropriate for a district court to grant a 12(b)(6) [or 12(c)] motion … on the basis of qualified immunity. Although an officer's entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point…, that point is usually summary judgment and not dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 433-34 (6th Cir. 2015) (internal quotation marks and citations omitted)).

The Fourth Amendment prohibits police officers—including Defendant Bennett—from unreasonably seizing citizens without proper authorization. *Gardenhire v. Schubert*, 205 F.3d 303, 312-13 (6th Cir. 2000). "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Indeed, "[a]ny arrest, whether formal or *de facto*, requires probable cause." *Gardenhire*, 205 F.3d at 315 (citation omitted); *see Crawford v. Geiger*, 656 F. App'x 190, 205 (6th Cir. 2016). When probable cause is absent, a warrantless arrest is "presumptively unreasonable, 'subject only to a few specifically established and well-delineated exceptions.'" *Gardenhire*, 205 F.3d at 313 (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)).

One exception to the Fourth Amendment's warrant requirement arises when a police officer faces exigent circumstances. *Kovacic v. Cuyahoga Cnty. Dept. of Children and Family Servs.*, 724 F.3d 687, 698 (6th Cir. 2013); *see Johnson v. City of Memphis*, 617 F.3d 864, 868 (6th Cir. 2010). "Exigent circumstances arise when an emergency situation demands immediate police action that excuses the need for a warrant." *Johnson*

*v. City of Memphis*, 617 F.3d 864, 868 (6th Cir. 2010). Exigent circumstances may arise when a situation presents "a risk of danger to the police or others." *Id*. (citations omitted). Police may encounter such dangers while engaged in community-caretaking activities that are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). "The community-caretaking function of the police may come into play when there is a risk of danger to the police or others, and may, therefore, be properly classified as an example of exigent circumstances." *Shoup v. Doyle*, 974 F.Supp.2d 1058, 1074 (S.D. Ohio 2013) (Rice, D.J.).

Defendants contend that Officer Bennett's actions during his encounter with Blankenship fall under the community-caretaking exception to the Fourth Amendment's probable-cause requirement. Defendants maintain, "As in *Shoup*, Officer Bennett's actions must be examined in light of what actions were objectively reasonable for a law enforcement officer in the role of community caretaker to take under the circumstances." (Doc. #17, *PageID* #82, citing *Shoup*, 974 F. Supp.2d at 1075-76) (other citation omitted).

Blankenship's Complaint, accepted as true and construed in his favor, fails to contain sufficient allegations to show that a reasonable officer in the circumstances Officer Bennett faced would have known his conduct violated Blankenship's clearly established Fourth Amendment rights. The Complaint asserts that when Officer Bennett first saw Blankenship inside the store he was "'sweating and swaying.'" (Doc. #3, *PageID* #24). Although the Complaint uses quotation marks around this description, the

8

absence of an accompanying citation, clarification, or contrary allegation in the Complaint leaves its present truthfulness intact. It must therefore be assumed here, when evaluating whether judgment on the pleadings is warranted, *see Albrecht*, 617 F.3d at 893, that Blankenship was sweating and swaying when Officer Bennett first saw him in the store.

The Compliant next fails to identify unreasonable ensuing conduct by Officer Bennett. The Complaint explains that Officer Bennett exited the store and moved his police cruiser to an area where he could determine if Blankenship was going to drive his own vehicle. Blankenship exited the store and walked by himself towards his truck. Seeing this, and having previously observed Blankenship to be sweating and swaying, Officer Bennett approached Blankenship. The Complaint at this point states that "Bennett … allegedly suspect[ed] Corey was impaired, which Corey denied." (Doc. #3, *PageID* #24). Regardless of whether Bennett actually suspected Blankenship was impaired, and assuming Blankenship denied being impaired, Officer Bennet did not act unreasonably by performing field sobriety tests to determine if Blankenship was a risk to himself or others. *See Shoup*, 974 F.Supp.2d at 1076-77 ("It may often be the case that, as with an intoxicated person, it is the seized person who creates a risk of danger." (citing as an example and parenthetically explaining, *Winters v. Adams,* 254 F.3d 758 (8th Cir. 2001) (community-caretaking function justified seizure to prevent intoxicated, erratic man from driving car and harming himself or others)); *see also Meehan v. Thompson*, 763 F.3d 936, 941 (8th Cir. 2014) ("it may be reasonable under the Fourth Amendment for a police officer, acting in his capacity as community caretaker, to seize

9

an apparently intoxicated individual 'to ensure the safety of the public and/or the individual, regardless of any suspected criminal activity.'"). Officer Bennett also acted reasonably by asking Blankenship "what would possibly contribute to his condition.'" (Doc. #3, *PageID* #24). The Complaint acknowledges that Blankenship responded by telling "Bennett that he was on blood pressure medication but had no other medical condition …." *Id*. This additional knowledge gained by Officer Bennett would alert a reasonable officer under the circumstances, acting as a community caretaker, of the need to protect the public from a potentially medication-impaired driver or to protect Blankenship by determining if he needed medical assistance (remember: Bennett had also seen Blankenship sweating and swaying).

Blankenship disagrees. He contends, "The innocent-seeming 'encounter' between … Blankenship and … Bennett occurred in a much different way than Bennett described in his subsequent reporting and in the present motion. Plaintiff's version of the facts is contained in the Complaint (mainly as 'claimed' and 'alleged' in Bennett's reports, in the Affidavit of the Plaintiff attached to this Opposition as Ex. #1, and in the store videotape of the dark parking lot on March 11, 2016." (Doc. #21, *PageID* #101). Blankenship maintains that what occurred between the time he left the store and was taken to the emergency room is "hotly disputed." *Id*. He also summarizes his version of the events based on his affidavit.

The problem is that Defendants' Rule 12(c) Motion attacks the plausibility of the claims raised in Blankenship's Complaint and the version of the events it describes, while Blankenship's memorandum raises allegations not appearing in the Complaint. He

asserts, for example, that Officer Bennett "knew the Plaintiff was not impaired or driving under the influence, based upon his previous observations of him inside the store, his improper field sobriety testing, and his stop of Plaintiff before he even reached his vehicle." (Doc. #21, *PageID* #104). He also refers to evidence outside the Complaint— "The videotape shows absolutely no danger posed by Corey." *Id*. at 105. Neither his extra-pleading allegations nor the evidence he relies on can be considered when analyzing Defendants' Rule 12(c) Motion unless it is converted to a Rule 56 motion for summary judgment. *See* Fed. Civ. P. 12(d). As has been done throughout this Report, "'[t]he district court remains free to refuse to accept materials outside the pleadings in order to keep the motion under Rule 12(c).'" *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc*., 452 F.3d 494, 503 (6th Cir. 2006) (quoting, parenthetically, 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1371 (3d ed. 2004).

Accordingly, the community-caretaking exception to the Fourth Amendment's warrant requirement applies here under the allegations raised in the Complaint and, as a result, the Complaint fails to allege facts that plausibly set forth a claim that Officer Bennett's conduct violated Blankenship's clearly established Fourth Amendment rights. Qualified immunity therefore protects Officer Bennett from Blankenship's First and Second Claims for Relief under the allegations raised in the Complaint.

"Although a district court should give plaintiffs an opportunity to amend a complaint once a qualified immunity defense is raised, plaintiffs cannot overcome a motion to dismiss on qualified immunity grounds unless they allege facts necessary to show that a defendant has violated their constitutional rights." *Cooper v. Parrish*, 203

F.3d 937, 951 (6th Cir. 2000); *see Shoup*, 974 F. Supp.2d at 1078. Blankenship's contentions that his version of the facts differs from Defendants' constitutes a sufficient reason to give him an opportunity to file an Amended Complaint.

V. **Discussion: Remaining Matters**

Blankenship asserts in his First Claim that Officer Bennett's conduct violated his rights under the Fourteenth Amendment's Equal Protection and Due Process Clauses. Defendants contend that judgment on the pleadings is warranted in their favor on these claims for the same reasons set forth in *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312-313 (6th Cir. 2005). Blankenship does not contend otherwise.

The Complaint asserts no facts indicating how Officer Bennett's conduct either burdened a fundamental right Blankenship was exercising, targeted a suspect class to which he belonged, or intentionally treated him differently than similarly situated persons. The Complaint therefore fails to state a plausible violation of Blankenship's rights under the Equal Protection Clause. *Id.* To the extent the Complaint asserts a violation of his right to due process based on a violation of the Fourth Amendment, "the Due Process Clause of the Fourteenth Amendment does not require any additional procedures beyond those mandated by the Fourth Amendment." *Id.* at 313. Blankenship's due-process claim therefore fails as a matter of law. *Id.*

Defendants next seek dismissal of Blankenship's claims against the Village of Gratis for failure to train or supervise. The Complaint does not assert a legal basis for these claims, but construing it in Blankenship's favor, he seeks to assert a claim against the Village under § 1983. This claim, however, fails as a matter of law in the absence of

12

a plausible claim that Officer Bennett violated Blankenship's constitutional rights. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) ("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983."); *see also Sampson v. Gee–Cram*, 655 F. App'x 383, 391 (6th Cir. 2016); *Cabaniss ex rel. Estate of Cabaniss v. City of Riverside*, 497 F.Supp.2d 862, 897–98 (S.D. Ohio 2006) (Rice, D.J.).

Defendants further contend that statutory immunity under Chapter 2744 of the Ohio Revised Code shields them from Blankenship's state-law claim. It is not apparent at this early stage of the case whether the Court will exercise supplemental jurisdiction over any of Blankenship's state-law claims. Concerns of efficient case and docket management thus advise holding Defendants' state-immunity arguments in abeyance pending further adjudication of Day's federal claims, in the event Blankenship files an Amended Complaint. *See York v. Lucas County, Ohio*, No. 3:13cv1335, 2015 WL 2384096, at *6 (N.D. Ohio 2015) (Helmick, D.J.).

Lastly, Defendants are correct that the Village of Gratis Police Department is merely an arm of the city it serves and therefore it is not *sui juris*. *See Gibson v. Mechanicsburg Police Department*, 3:16cv48, 2017 WL 2418317, at *5 (S.D. Ohio, 2017) (Rice, D.J.) (citing *Jones v. Marcum*, 197 F.Supp.2d 991, 997 (S.D. Ohio 2002)). All claims against the Village of Gratis Police Department are therefore subject to dismissal.

## IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' Motion for Judgment on the Pleadings (Doc. #17) be GRANTED;

2. Defendants' Motion to Strike Exhibits (Doc. #23) be DENIED as moot; and

3. Plaintiff be granted twenty days from the date of a Decision and Entry adopting this Report to file an Amended Complaint in compliance with Rule 11 of the Federal Rules of Civil Procedure.


December 8, 2017 *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).